FILED

2009 Nov-23  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

LYNN M. FOSHEE,

     PLAINTIFF,

v.                            CASE NO.: CV-09-J-136-S

ST. VINCENT'S HEALTH SYSTEM,

     DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 7), memorandum (doc. 8), and evidence in support of said motion (doc. 9), to which the plaintiff has submitted a response (doc. 10) and evidence in opposition (doc. 11). The defendant thereafter filed a reply (doc. 15). The court having considered the pleadings, evidence and memoranda of the parties finds as follows:

## I. Factual Background

Plaintiff sues her past employer on the sole count of retaliatory discharge under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq*. The plaintiff was employed by defendant in a number of capacities since 1991. Plaintiff depo. at 12-14. Beginning in 2004, the plaintiff became a salaried employee as Coordinator of the Cancer Support Services and Tobacco Cessation Program. Complaint, ¶¶ 9-10;

plaintiff depo. at 14.  The plaintiff was named "employee of the month" for August

2006.  Ramsey depo. at 36-37.[1]

In August 2006 the plaintiff began to see a psychiatrist for job related stress.

Plaintiff depo. at 28-29. Plaintiff blamed this on a lack of assistance.  She reported

her dissatisfaction with her lack of help and her need for help in August of 2006 to

Michelle Ray,[2] who reported it to her supervisor Carol Ratcliffe.[3] Plaintiff depo. at

39-40; Ratcliffe depo. at 27, 74.  As a result Gail McLaughlin was assigned to work

with plaintiff.  Ratcliffe depo. at 29-30.  McLaughlin worked two to three days a

week with plaintiff for a total of eight to ten hours a week. *Id*.  After August of 2006

Ratcliffe had reports of problems with plaintiff weekly from her supervisor.  *Id.* at 54-

57.

In October of 2006 plaintiff went to Cheryl Ray, in human resources, with her

complaints about not enough help, even though she had been assigned Gail

McLaughlin.  Plaintiff depo. at 42; Ramsey depo. at 23.  After a meeting on October

24, 2006, Carol Ratcliffe agreed to let one additional person be assigned to help at the

---

[1]Bonnie Ramsey was director of human resources.  Ramsey depo. at 8.

[2]Michell Ray became director of the Cancer Treatment Center at some point in 2006.
Plaintiff depo. at 16.  She resigned and Terri Poe became director in November 2006.  *Id.* at 16-
17.

[3]Carol Ratcliffe was Vice President of patient care services and, as such, Poe's
supervisor.  Plaintiff depo. at 18.

2

Cancer Center ten hours a week. Plaintiff depo. at 55-56: Ramsey depo. at 23.  That additional person was assigned to help the center as such, not just plaintiff. *Id*.  The plaintiff continued to complain about her help and the help continued to complain about the plaintiff.[4]  Ramsey depo. at 43.

Other complaints about plaintiff from co-workers dealt with inappropriate interaction with co-workers and the language being used.  Ramsey depo. at 24-25, 42-43; Ratcliffe depo. at 41, 45.  As a result of the October 24 meeting between plaintiff, Ramsey and Ratcliffe, the recommendation was made that plaintiff work with the leadership coach, Sylvia Norman.  Ramsey depo. at 43-44; Ratcliffe depo. at. 41-43.  At that meeting it was additionally decided that plaintiff and her help, Gail, would talk and plaintiff would make a list for Gail to follow. Ramsey depo. at 48.

On October 31, 2006, Ramsey got another e-mail from Sylvia stating:

> I met with Lynn Foshee this afternoon. The main recommendation I made for her to be able to succeed in her role, despite her many frustrations, was for her to stay focused on her immediate job duties and discontinue further evidence collection on everything else. I encouraged her to appreciate the helpful addition of Gail, speak positively of what is working well in her dept., and be more aware of stress triggers that cause her to react in ways that are expensive to the team.

---

[4]The help in the cancer treatment center complained that plaintiff would take the bras that women with mastectomies used and she would put them all over the floor after her staff had organized them, sorted them and put them away.  Ramsey depo. at 43.

Submitted as attachment 4 to plaintiff's evidentiary submissions, at D00366.

The plaintiff requested FMLA leave on November 2, 2006, to begin December 4, 2006, and extending until January 2007.  Plaintiff depo. at 20.  She asserts she had actually discussed this leave with Michelle Ray as early as September or October, but wanted to wait to take this leave until after certain work related obligations were met. *Id*. at 21.  According to plaintiff, Ray "was fine with that."  *Id*.  The plaintiff completed the relevant form on November 22, 2006.  Defendant exhibit 5; plaintiff depo. at 32.  The medical certification from plaintiff's doctor for the 2006 FMLA leave was dated November 28, 2006.  Plaintiff depo. at 33; defendant exhibit 5.  The plaintiff listed January 7, 2007, as her return to work date, based on her accrued time.  Plaintiff depo. at 22.  However, her doctor did not release her to return to work on that date.  *Id*. at 28-29, 35.

During this time, and before her leave actually began, her supervisor continued to question the plaintiff's performance, culminating in requiring her to sign a "Behavior Agreement."  Plaintiff depo. at 62-67; 80-81, 84; Ratcliffe depo. at 51.  When Carol Ratcliffe notified Bonnie Ramsey she wanted to meet to discuss plaintiff's termination, Ramsey noted on plaintiff's most recent evaluation that plaintiff had been named "employee of the month" in August 2006 and that plaintiff had just applied for FMLA leave.  Ramsey depo. at 53, 55-58.  Ramsey questioned

4

how plaintiff could go from outstanding to in need of termination that quickly, and the decision was made to focus on the "Behavior Agreement" rather than termination. *Id*. at 58-65.  At a  November 15, 2006, meeting, the plaintiff was presented with the agreement, but she was not told she would be terminated if she did not sign it. *Id*. at 49-50; 65.   However, at that meeting, the plaintiff felt "interrogated" about her performance.  Plaintiff depo. at 26; plaintiff exhibit E, at D00206.

Immediately prior to the plaintiff beginning her FMLA leave, Terri Poe took over as supervisor.  Plaintiff depo. at 19.  The plaintiff requested Poe meet with her before she went out on leave, but did not hear back from Poe.  *Id*.  While on leave, the plaintiff submitted a lengthy "Rebuttal to Allegation and Behavior Agreement," dated January 22, 2007, in which she disputes many of the complaints against her and provides defendant with her own version of the events which lead up to the November 15, 2006, agreement.  Plaintiff exhibit E.

On December 19, 2006, plaintiff's FMLA leave was extended through February 27, 2007.  Defendant exhibits  6, 7.  According to plaintiff, Amy Engle suggested the plaintiff get her doctor to extend the certification through that date "to be safe," because it was as yet unknown when the plaintiff could return to work.[5]

---

[5]Amy Engle was benefits administrator for the facility where plaintiff worked.  Engle depo. at 8. February 27, 2007, was the date on which the plaintiff would have received a full twelve weeks of FMLA leave.

Plaintiff depo. at 34.  However, plaintiff's physician did not release her to return to work on February 27, 2007.  *Id.* at 35, 39.  Plaintiff states her physician would only release her to go back to work if defendant agreed to meet and discuss providing the plaintiff assistance, mainly in the form of clerical help, to diffuse the job stress, but Poe would not meet with her.  *Id.* at 35-36, 39.   Poe told plaintiff they would talk about it when plaintiff returned to work.  *Id.* at 36, 43-44; defendant exhibit 12.  The plaintiff called Poe several times after this, but Poe never returned her calls.  Plaintiff depo. at 56.  She testified that she saw no need to discuss it further because "I felt like they would want to meet with me."  *Id.* at 56-57.

On February 27, 2007, the plaintiff asked to be placed on a medical leave of absence (MLOA).[6]   Plaintiff depo. at 38; defendant exhibits 8, 9, 10.   When employees are on MLOA, defendant usually posts the position as available.  Ratcliffe depo. at 31-32.  Thus, on March 5, 2007, the plaintiff learned her job had been posted as available.  Plaintiff depo. at 78.  Her position was posted because defendant needed

---

[6]A Medical Leave of Absence is a benefit offered by defendant to its employees.  *See* Declaration of Bonnie Ramsey, submitted as defendant exhibit A, and exhibit A thereto.  Under this policy, after exhausting FMLA leave, an employee may continue on leave, and continue to receive benefits, for up to one year total.  *Id.*; Engle depo. at 15. However, the defendant's policy does not guarantee the person on medical leave a return to his or her specific position. Additionally, if a department manager determines a need to fill the position in question, that manager may request the position be posted as available.  *Id.* at 22.  The plaintiff and her doctor talked about the plaintiff applying for Long Term Disability benefits, but she never did.  Plaintiff depo. at 38.

to have the job filled.  Ramsey depo. at 32.    Believing she had been terminated
because of the job posting, the plaintiff submitted a letter of resignation of March 12,
2007.  Plaintiff depo. at 48-49, 79; defendant exhibit 11.  The resignation letter states

> After considerable thought and prayer, I have decided to resign my
> position at Medical Center East, effective immediately.  This job was my
> passion, and I gave it my all; however, I am unwilling to make myself
> sick again by holding on to something that has already passed.  I plan to
> spend the next few weeks exploring other career opportunities.
> ....
> Please let me know if there is anything I can do to make the transition
> easier for you.  I will gladly spend a day at home making sure my files
> are in order....
> Thank you for allowing me to serve Medical Center East and its
> patients.  Again, I wish you continued success.

Defendant exhibit 11.  Plaintiff resigned "because I was not going to let my job make
me sick again. I was–I had inadequate support, I had asked repeatedly for help, I
had–I was suffering, my husband told me– I didn't realize it at the time, I'd come
home every day and go to bed at 5:30, and I just wasn't going to make myself sick
again." Plaintiff depo. at 49.

No one from defendant ever said anything negative to plaintiff about the fact
that she had taken FMLA leave.  Plaintiff depo. at 49-50.  Plaintiff's only complaint
was that, before she started her leave, she was asked when she thought she would be
back, she told defendant January 7, 2007, and plaintiff thought that was a little
"pushy" because "you really don't have to give a date...." *Id*.

In August 2007 the plaintiff met with Katie Chamblee and told her about "them not letting me – not agreeing to a meeting and so forth."  Plaintiff depo. at 57-58, 61. The plaintiff told Chamblee she thought this was FMLA retaliation, that she had resigned and that she was looking for a job.  *Id.* at 61.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## III. LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the plaintiff's claim of retaliation under the FMLA.

The FMLA entitles a covered employee to take up to twelve weeks of leave in a twelve month period for a "serious health condition" of the employee. *Smith v.*

9

*BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1305 (11th Cir.2001).   The FMLA prohibits an employer from interfering with this right.   29 U.S.C. § 2615.

The plaintiff received leave under the FMLA.   She then asked for and received a MLOA.   While on MLOA, the plaintiff saw a posting for her job and voluntarily sent a letter of resignation.   The parties do not dispute that the plaintiff received all the benefits to which she was entitled under the FMLA.   The sole issue before the court is whether the plaintiff was terminated, or constructively discharged, in retaliation for taking FMLA leave.

The parties agree that the familiar *McDonnell Douglas* burden shifting framework applies to claim.   The plaintiff must thus prove that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.   *Martin v. Brevard Co. Public Schools*, 543 F.3d 1261, 1268 (11th Cir.2008).   The plaintiff must demonstrate that her employer's actions were motivated by an impermissible retaliatory or discriminatory animus.   *Id*. at 1267-1268; citing *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir.2001).

Although the plaintiff asserts that defendant began the process to terminate the plaintiff "mere days after she first filed for FMLA leave" (plaintiff's response at 9), the fact remains that the defendant never did fire the plaintiff.   Rather, the plaintiff

had ongoing issues, prior to ever requesting FMLA leave, with the amount of assistance she was provided to complete her job related duties.  The plaintiff requested her supervisor to meet with her while she was on FMLA to continue these discussions, and her supervisor declined.  Thus, the plaintiff continued on FMLA leave until she received her full 12 weeks, and then transferred to a medical leave of absence, with no planned return to work date.

While the plaintiff asserts that a jury could interpret the defendant's actions as having a "materially adverse affect" upon the plaintiff, this is not what the plaintiff must demonstrate for purposes of establishing her prima facie case.  Rather, the plaintiff must demonstrate an "adverse employment action."  Because the only employment action with any effect upon the plaintiff's employment was plaintiff's voluntary resignation, the plaintiff must establish that this was somehow an adverse employment action by the defendant.  Although plaintiff argues she was constructively terminated, she fails to establish how.  The threshold for establishing constructive discharge is "quite high," and employs an objective standard.  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir.2001).  The plaintiff asserts that her supervisor's refusal to meet with her to discuss the conditions under which she would return to work constitutes such an action, but the plaintiff offers no law which supports an assertion that the plaintiff is entitled to accommodations pursuant

to the FMLA.[7]  In fact, case law states the exact opposite.  *See e.g., Battle v. U.S. Parcel Serv., Inc.*, 438 F.3d 856 (8th Cir.2006); *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 384 (3rd Cir.2002).

The plaintiff's failure to be reinstated to her position was solely because her doctor never released her to return to that position. An employee's right to return to work after taking FMLA leave is not unlimited.  *See Harrell v. U.S. Postal Service*, 445 F.3d 913, 919 (7th Cir.2006).  The plaintiff never had the right to return to her specific job.  Rather, she was entitled to return to work at the expiration of her FMLA leave to either her position or one with equivalent employment benefits, pay, and other terms and conditions of employment.  *See* 29 C.F.R. § 825.214; 29 U.S.C. § 2614(a)(1).  However, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to the restoration to another position under the FMLA."  29 C.F.R. § 825.216(c).  *See also Harrell*, 445 F.3d at

---

[7]The State of Alabama's finding that the plaintiff was entitled to unemployment benefits because she left her job for good cause, namely that "impairment of his or her health or physical condition was caused by working conditions which were substantially less favorable that those prevailing for similar work" does not assist the plaintiff.  That finding continues that the plaintiff "voluntarily left with good cause connected with the work."  Plaintiff exhibit F.  The fact that the plaintiff's job was too stressful for her does not create a constructive discharge.  *See e.g., Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197 (11th Cir.2001) (holding that repeatedly receiving poor evaluations is unpleasant, but does not rise to the level of constructive discharge).

919 (an employee returning from FMLA leave is not entitled to restoration if she "cannot perform the essential functions of the position").

Given the plaintiff's failure to establish any adverse employment action, the court is of the opinion that the plaintiff cannot prevail on her prima facie burden and therefore the defendant is entitled to judgment in its favor as a matter of law.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment on the sole count of the plaintiff's complaint is hereby **GRANTED**.  This case is  **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 23rd day of November, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

13